UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LOWELL GERBER,  et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 09-351-B-W |
| | ) | |
| DOWN EAST COMMUNITY HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On March 1, 2010, I conducted a telephone conference to address discovery disputes between the parties and ordered the parties to brief a dispute over Plaintiffs' assertion of a work product privilege in documents constituting interviews of non-party witnesses designed to produce statements and/or affidavits.  Based on these briefs and my own review of persuasive precedent, I overrule Defendant's request that I compel production of said documents, subject to Plaintiffs' compliance with certain directives related to initial and supplemental disclosures and submission of an amended privilege log that itemizes documents by date, though not by witness name, and that clarifies the nature of the documents created by Plaintiffs Duval and Gerber, which have most recently been described as Plaintiffs' notes rather than correspondence.

**NATURE OF DISPUTE**

This dispute is based on a privilege log produced by Plaintiffs in which they report that they are withholding from discovery "electronic and paper documentation relating to [their] efforts to investigate the case and collect evidence in anticipation of and in furtherance of litigation."  The log identifies three groups of such documents.  The first group is described as documents created by Attorney Chad Hansen and received by potential witnesses.  The second group is described as documents created by Plaintiff Gerber and received by potential witnesses.

The third group is described as documents created by Plaintiff Duval and received by potential witnesses.  Plaintiffs now report that the documents in the first group "primarily consist of email interviews conducted by Plaintiffs' counsel with potential witnesses" (email communication chains).  Additional documents consist of paper letters sent to potential witnesses by counsel requesting documents and the preservation of documents, and a single letter to one potential witness enclosing a draft affidavit.  Plaintiffs now report that the documents in the second and third groups are actually electronic documents created by the Plaintiffs during conversations with potential witnesses but not shared or exchanged with potential witnesses or anyone else, other than Plaintiffs' counsel.  (Pls.' Brief at 2, Doc. No. 43.)  In Plaintiffs' view, all of these documents are protected from disclosure by the work-product privilege.

For its part, Defendant Down East Community Hospital argues that the privilege log is inadequate because it does not itemize the communication by each individual recipient or by date.  In particular, Defendant maintains that Plaintiffs are required, minimally, to separately itemize every document sent and to disclose the identity of every potential witness who received or responded to an email communication.  (Def.'s Brief at 2-3, Doc. No. 42.)  Defendant argues that potential waiver of the work product privilege cannot be determined without this minimal level of disclosure.  (Id. at 3.)  Defendant views the identity of every potential witness contacted by Plaintiffs as factual information subject to disclosure in the course of discovery conducted under Rule 26(b).  (Id. at 4.)  Defendant also maintains that Plaintiffs have probably waived any work product privilege to the extent that email communications may have disclosed work product to the non-party witnesses in question.  (Id. at 5.)  Defendant does not dispute that these documents are a product of this litigation or were produced in anticipation of litigation.  Rather, Defendant contends that the log is inadequate as a matter of law because it does not name names

and that an adequate log might reflect a waiver of the privilege because it would name one or more non-party witnesses whom Defendant might consider as adverse to Plaintiffs' cause.

The discovery initiative that gives rise to the instant dispute consists of a request for production of "[a]ny and all documents concerning any statements made by any witness or witnesses or persons interviewed in connection with this Lawsuit and/or concerning your claims in this Lawsuit."

## DISCUSSION

Protection of witness interviews has been one of the focuses of the attorney work-product privilege since its inception in American law.  Hickman v. Taylor, 329 U.S. 495, 497, 510-11 (1947) (concerning "the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen.")  The Supreme Court's description of the privilege in Hickman remains instructive to this day on the bounds of the work product privilege, though the privilege has been incorporated into and defined by the Rules of Civil Procedure.[1]  See United States v. Textron Inc., 577 F.3d 21, 26-27, 29-30 (1st Cir. 2009).  The scope of the work-product privilege is defined in Rule 26(b)(3), which provides:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But . . . those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has a substantial need for the materials to prepare

---

[1]    In United States v. Nobles, 422 U.S. 225, 243-44 (1975), the Supreme Court described the Hickman rule as a rule concerning the legitimate scope of discovery rather than as a rule that witness statements are privileged work product.  I have referred to the work product privilege repeatedly herein, as is the practice reflected in the trial court decisions cited herein, though a more technically precise reference might be to the "trial preparation materials exception" now expressed in Rule 26(b)(3).

3

> its case and cannot, without undue hardship, obtain their substantial equivalent
> by other means.
>
> (B) *Protection Against Disclosure*.  If the court orders discovery of those
> materials, it must protect against disclosure of the mental impressions,
> conclusions, opinions, or legal theories of a party's attorney or other
> representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3)(A), (B).  The attorney work-product privilege is designed to ensure

counsel a "certain degree of privacy, free from unnecessary intrusion by opposing parties and

their counsel," in the absence of which "the interests of the clients and the cause of justice would

be poorly served."  Hickman, 329 U.S. at 510-11.

It is the proponent of the privilege who bears the burden of demonstrating that the

privilege applies to the materials or information at issue.  Pursuant to the Rules, that party must

"expressly make the claim" of privilege and "describe the nature of the documents,

communications, or tangible things not produced or disclosed—and do so in a manner that,

without revealing information itself privileged or protected, will enable other parties to assess the

claim."  Fed. R. Civ. P. 26(b)(5)(A).  This obligation is carried out by means of a privilege log.

How particularized a privilege log must be is a matter of contention.   The First Circuit does not

appear to have dictated the level of specificity a district court must require with respect to

privilege logs and the Rules give the Court discretion in this regard.  Klonoski v. Mahlab, 156

F.3d 255, 267 n.4 (1st Cir. 1998) ("The district court has discretion to alter the discovery

requirements as appropriate for a given case, if the rules permit and if justice is served thereby.")

(citing Fed. R. Civ. P. 26(a)(1), 26(a)(3), 26(b)).

## A.    Plaintiffs' electronic notes

Plaintiffs' own notes of their investigations or interviews fall within the privilege.  See,

e.g., Peterson v. Wallace Computer Servs., Inc., 984 F. Supp. 821, 824 (D. Vt. 1997) (finding

that notes and memoranda from investigation undertaken by a director of human resources and a plant manager constituted work product prepared in anticipation of litigation).  Plaintiffs will amend their privilege log to accurately indicate whether or not their personal communications with potential witnesses involved an exchange of documents (*e.g.*, e-mails) or whether the documents being withheld are simply Plaintiffs' own notes of conversations, in whatever form. Plaintiffs will also itemize these documents according to the date of creation so Defendant may ascertain how the dates relate to the underlying facts associated with anticipation or commencement of litigation.  I recognized that the dates currently indicated on the privilege log (July 25, 2008-Present) correspond with the date specified in the complaint as the date of termination (in July 2008), and that this fact tends to enhance the assertion that they were prepared in anticipation of litigation.  However, given that I am not ordering itemization by witness name, I find it to be a reasonable compromise that the documents be individually itemized by date so that, among other things, there is some sense as to the number of documents at issue.

To the extent that Plaintiffs engaged in email communications with potential witnesses in anticipation of litigation or for purposes of trial, such communications will be subject to the following discussion of electronic correspondence with potential witnesses by counsel.

**B.    Counsel's electronic correspondence with potential witnesses**

Plaintiffs' counsel indicates that e-mail was utilized to conduct interviews of and to obtain statements from certain potential witnesses.  This raises two questions.  First, does the attorney work-product privilege extend to written correspondence despite the fact that the witness necessarily obtains a copy of the e-mail correspondence chain and plays a role in its production? Second, if it does, must Plaintiffs disclose in their privilege log the identities of the witnesses

with whom their counsel corresponded by e-mail?  Before addressing those two concerns, it

bears noting that witness statements prepared in anticipation of litigation or for trial are attorney

work-product by nature.  See, e.g., McBride v. Medicalodges, Inc., Nos. 06-2535-JWL, 06-2536-

JWL, 06-2538-JWL, 2008 U.S. Dist. LEXIS 42247, 2008 WL 2157114 (D. Kan. May 22, 2008)

(Rushfelt, Mag. J.) (denying defendant's motion to compel the plaintiffs to produce a witness

statement they took of a former employee because it was protected by the work product doctrine

and the defendant did not establish that it could not obtain the substantial equivalent by other

means);  EEOC v. Rose Casual Dining, L.P., No. 02-7485, 2004 U.S. Dist. LEXIS 1983, *7-9,

2004 WL 231287, *2-3 (E.D. Penn. Jan. 23, 2004) (finding that witness statements generated

after employee was fired and at the direction of counsel in preparation for litigation were

protected by the work product doctrine).  Thus, Defendant's request for production of "[a]ny and

all documents concerning any statements made by any witness or witnesses or persons

interviewed" is a request inherently designed to intrude upon Plaintiffs' work product.  Despite

this circumstance, Defendant has yet to articulate a substantial need for the materials or explain

why it cannot obtain their equivalent through its own reasonable efforts.

    1.  *E-mail correspondence with potential witnesses is work-product if created for litigation purposes*

    I conclude that the attorney work-product privilege extends to the e-mail correspondence

between Plaintiffs' counsel and potential witnesses because, like a short-hand or stenographic

recording of a witness statement or interview, the e-mail interview was produced by counsel for

litigation purposes and the participation by a witness in an e-mail interview is comparable to

participation by a witness in a recorded oral interview or the creation of a written statement.  The

fact that the witness authors a portion of the e-mail correspondence chain and likely retains a

copy of the correspondence does not undermine the privilege.

As for authorship, an e-mail correspondence chain is still produced by counsel's skillful or tactical questioning despite the fact that the witness responds in writing rather than in words.  I am unaware of any precedent holding that a witness statement is not work-product whenever it is the witness who puts pen to paper (or finger to keyboard) rather than counsel or counsel's agent.  The <u>Hickman</u> decision, I note, includes correspondence among its list of protected papers.  329 U.S. at 511 (stating that work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways").  A party should not be disadvantaged with respect to trial preparation simply because counsel used a tangible medium of communication rather than an oral interview.  I am unaware of any basis in the law for denying work product protection to witness statements simply because the witness plays a role in writing out (or signing) the statement.

As for the witness's retention of a copy of the correspondence, any witness is entitled to obtain a copy of his or her own statement under Rule 26(b)(3)(C).  The fact that the witness may obtain a copy of his or her own statement, in other words, does not prevent the statement from coming within the work-product privilege.  As in any other situation, counsel always runs the hazard that a potential witness will demand and share a copy of his or her statement with the other side.  Of course, in this case, there is the extra hazard that the witness might also share counsel's side of the e-mail correspondence with the other side, which would disclose not only the witness's statements but also what counsel asked.  This additional risk may or may not disadvantage Plaintiffs.  In any event, it does not mean that this Court should *compel* production of attorney work product during the discovery process.

Because e-mail correspondence with potential witnesses falls within the work-product

privilege,[2] Defendant is entitled to obtain a copy of a witness's portion[3] of an e-mail correspondence chain from Plaintiffs through discovery only if Defendant can show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain the[] substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Defendant has not articulated any undue hardship that would prevent it from interviewing the pool of potential witnesses in this employment matter.  Presumably Defendant enjoys equal access to these witnesses.  In the absence of such a showing, Defendant is merely trying to piggy-back on or poach the work-product of Plaintiffs' counsel.  Permitting that to happen as a matter of routine discovery process would compromise the ends that the work-product privilege is meant to serve.  Hickman, 329 U.S. at 512 ("But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.").

   2.  *Itemization of witness names and dates*

   Defendant argues that it is entitled to know the identity of the witnesses with whom counsel has corresponded by e-mail, even if that correspondence is within the attorney work-product privilege.  Defendant also wants Plaintiffs to specify the dates on which the documents were created.  It justifies this position on the ground that it cannot adequately challenge

---

[2]     Defendant does not contest the representation that the correspondence was prepared in anticipation of litigation or for trial.  It does complain, however, that the privilege log is not sufficiently particularized.

[3]     If Defendant made such a showing, I would permit Plaintiffs' counsel to redact his side of the e-mail correspondence before producing a copy from counsel's own files and records.  Frank v. L.L. Bean, Inc., No. 04-221-P-S, 2005 U.S. Dist. Lexis 19722, 2005 WL 2177062 (D. Me. Sept. 8, 2005) (Kravchuk, Mag. J., Mem. of Dec. on Mot. to Compel) (denying non-party witness's motion to compel production of an unredacted copy of a transcript of his own interview).  Of course, Defendant might eventually obtain an unredacted e-mail chain from a cooperating witness, since the correspondence may still be in the witness's possession.  Such a voluntary disclosure would negate the work product privilege in that document.  United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997) (allowing that "disclosure to an adversary, real or potential, forfeits work product protection").

Plaintiffs' assertion of the work-product privilege unless every correspondence document or file is individually itemized in the privilege log according to each witness's name and the date of file creation.  (Def.'s Brief at 2-3.)

Without question there is precedent in which courts have scrutinized the relationship between a party and a particular witness to determine whether disclosure of material or information to the witness results in waiver.  On the other hand, it is also recognized that the work-product privilege extends even to information exchanged with non-parties.  See, e.g., Stokes v. City of New York, No. CV 2005-0007 (JFB) (MDG), 2006 U.S. Dist. LEXIS 50480, *5-6, 2006 WL 2064976, *2 (S.D.N.Y. July 24, 2006) (collecting cases).  The work-product privilege is recognized as having greater breadth than the attorney-client privilege, in part, for this very reason.  The inquiry is sometimes phrased as whether a disclosure to a non-party "substantially increases the possibility that an opposing party could obtain the information disclosed."  GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46, 52 (S.D.N.Y. 1979).  If it does, then it is said that waiver applies, so the party who made a disclosure of work product must also disclose the work product to the opponent in discovery (and not merely identify the individual with whom the work product was shared).  Defendant argues that it must know the names of the potential witnesses with whom Plaintiffs or their counsel have corresponded so it will be able to argue that communication with a given individual was so inherently risky that the Court should compel production of that communication (even though the witness has not, in fact, divulged the communication to Defendant).  For reasons that follow, I conclude that such an approach should not be applied in the circumstances of this case.

The disclosure of witness lists (non-expert, potential or intended witnesses) is addressed in Rule 26 in three locations.  First, it is mandatory, unless otherwise stipulated or ordered by the

court, for each party to make an initial disclosure to the other parties of, among other things: "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."[4] Fed. R. Civ. P. 26(a)(1)(A)(i).  It would not be out of the ordinary for a party to identify in an initial disclosure a collection of individuals likely to have discoverable information without thereby singling out any individual witness as a particularly likely, or better, or worse, source of testimony in favor of either side.  For example, in an employment context like the instant suit, a party might satisfy its initial disclosure obligation by providing a list of co-workers by name and available contact information.  Defendant has not suggested that Plaintiffs' initial disclosures were deficient in this regard.

        In addition to the initial disclosure, Rule 26 also requires a party to disclose pretrial, among other things:  "the name and, if not previously provided, the address and telephone number of each witness—separately indentifying those the party expects to present and those it may call if the need arises."  Fed. R. Civ. P. 26(a)(3)(A)(i).  Quite unlike the initial disclosure, this mandatory disclosure does not enable a party to withhold specifically identifying those witnesses whose testimony it expects to present at trial.  However, this mandatory disclosure may be withheld, by rule, until 30 days prior to trial.  Fed. R. Civ. P. 26(a)(3)(B).  The existing scheduling order in this case does not override that provision.

        Finally, Rule 26 addresses witnesses in relation to the scope and limits of discovery in Rule 26(b)(1):

---

[4]      The unsworn communications themselves, being unsworn, are hearsay, and therefore cannot be used to prove the truth of any matters asserted in them.  Fed. R. Evid. 801(d)(1)(A).  However, they may be used as tools to impeach or to refresh recollection.  Although it does not dictate the outcome of this discovery dispute, it is interesting to note that Rules 612 and 613 of the Federal Rules of Evidence contemplate production of prior written statements at trial rather than in advance of trial.

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

The limitations imposed by Rule 26(b)(2)(C) include a limit that "must" be imposed if the discovery sought can be obtained from another, "more convenient, less burdensome" source. Fed. R. Civ. P. 26(b)(2)(C)(i). Finally, Rule 26(b)(3) expressly protects trial preparation materials in the absence of a showing of substantial need and an inability to obtain the information by other means.

The question, as I see it, is whether Rule 26(b) requires that Plaintiffs report the names of individuals with whom they or their counsel have had communications to date, ahead of the mandatory pretrial disclosure of the specific witnesses whom Plaintiffs expect to call, or may call, for purposes of trial. Obviously, Rule 26(b)(1) describes a broad category of discoverable information that is relevant to a party's claims or defenses, including the "identity and location of persons who know of any discoverable matter." This language clearly encompasses the identity of potential witnesses. This broad entitlement, however, is limited to any nonprivileged matter. Where work product (trial preparation) materials are concerned, the court must limit discovery when there is a less burdensome source for the information. There is no overriding need on the part of Defendant (none has yet been articulated) that would justify an intrusion into the details of which potential witnesses Plaintiffs have been focusing their energies on in terms of trial preparation when the obvious alternative and less burdensome approach is for Defendant to speak to the potential witnesses itself to determine what testimony they can offer.

11

This conclusion necessarily informs my interpretation of what amounts to a sufficient disclosure in a privilege log.  I conclude that a party complies with Rule 26(b)(5)(A)(ii) if it describes "the nature" of a document or communication as an interview with a potential witness, without specifically identifying which witness has just been interviewed.  This ruling is subject, of course, to compliance with both Rule 26(a)(1) (regarding initial disclosure) and Rule 26(e) (regarding supplemental disclosure).  If in the course of their investigations and trial preparation, Plaintiffs have identified a witness not previously disclosed *by name* under Rule 26(a)(1)(A)(i), they must supplement their initial disclosure and provide Defendant with the witness's name and the required contact information for the witness.  This ruling is also subject to eventual compliance, of course, with the pretrial disclosure requirements of Rule 26(a)(3).  Compliance with Rule 26(a)(3) is essential to prevent surprise and to ensure a fair contest.  Moreover, it is obviously the case that any documents obtained from witnesses that have independent, substantive evidentiary value must be disclosed under both subsection (a)(1) and subsection (b)(1) of Rule 26.  That requirement does not extend to unsworn statements, which do not have evidentiary value, or to affidavits, which have only limited evidentiary value in connection with pretrial motions.

I recognize, of course, that some trial courts require that privilege logs disclose the identities of witnesses with whom attorney work product has been shared.  However, I am not persuaded that there is a general rule that requires a privilege log to divulge the names of each witness from whom a party has sought a statement.  When the work product at issue is interview correspondence for purposes of witness development, that communication *is* the work product. In other words, such a situation does not involve a disclosure of work product documents to a non-party unassociated with the process of creating the work product in question.  That very

distinguishable scenario is the one that exists in all but one of the cases relied upon by

Defendant.  See Gail v. New England Gas Co., 243 F.R.D. 28, 30 (D. R.I. 2007) (involving an

agency's effort to gain the return of work product documents inadvertently produced in response

to a subpoena);  SEC v. Beacon Hill Asset Mgmt., LLC, 231 F.R.D. 134, 146-47 (S.D.N.Y.

2004) (holding that voluntary disclosure of certain work product documents to certain third

parties who did not participate in the creation of the documents did not waive the work product

privilege against disclosure to an opponent in the course of discovery);  but see Ricoh Co. v.

Aeroflex Inc., 219 F.R.D. 66, 69-70 (S.D.N.Y. 2003) (involving e-mails created by a non-party

and sent to counsel as well as e-mails sent from counsel to a non-party, and categorically

denying work-product protection).[5]  The voluntary disclosures to a third party uninvolved with

the development of the work product itself is not the same as the development or acquisition of a

statement from a potential witness via communications exchanged with that very witness.  The

latter kind of disclosure is necessary to the development of work product and is categorically

different from an unnecessary disclosure inadvertently or voluntarily made.  The present scenario

involves the development of work product rather than the disclosure or sharing of work product

with unnecessary persons.  In the context of this lawsuit, I conclude that it is sufficient for

Plaintiffs to disclose communications with potential witnesses, categorically, as they have done,

---

[5]      The Ricoh court cited Ramsey v. NYP Holdings, Inc., No. 00-Civ.-3478 (VM) (MHD), 2002 U.S. Dist.
LEXIS 11728, 2002 WL 1402055 (S.D.N.Y. June 27, 2002).  In Ramsey, the court addressed whether a non-party
could withhold production of work product created for the benefit of the non-party rather than for the benefit of the
party.  LEXIS at *6, *19-23, WL at *2, *5-7 (describing the invasion as "far less acute" when the non-party's work
product is given up as opposed to an adversary's work product).  That scenario does not apply here.  It did, however,
color the scenario addressed in Ricoh.
         Defendant also relies on Tyler v. Suffolk County, 256 F.R.D. 34 (D. Mass. 2009), which appears more
favorable to their position.  However, in Tyler, the plaintiffs sought to withhold the names of individuals who
completed class-action questionnaires after they had already shared the contents of the questionnaires with the
defendants.  The court was not persuaded that the names of the respondents had any particular value as work product
in that situation and there is no suggestion that the plaintiffs advanced any persuasive argument as to why disclosure
would intrude upon their trial preparation.  Because there is no discussion in Tyler of the work product privilege in
relation to witness statements generally and because the case involved idiosyncratic facts, I am not persuaded that I
should follow the approach taken there in this case.

without naming names so as to flag for Defendant's benefit the witnesses on whom Plaintiffs have focused their energies.[6] This is subject, again, to compliance with mandatory initial, pretrial, and supplemental disclosures of *all* identified witnesses.

Finally, although Plaintiffs are not required to name names and thereby divulge their trial preparation in their privilege log, they must itemize the documents in question according to date of creation so that Defendant may consider how the date of creation relates to the likelihood that the document was prepared in anticipation of litigation or for trial purposes. Such an itemization is not likely to undermine Plaintiffs' claim of work product privilege here, because the current log indicates that the documents were produced subsequent to the Plaintiffs' termination date(s). However, it is appropriate that a party creating a privilege log not be permitted to use general categories so as to hide the number of documents being retained. Plaintiffs' current log fails to adequately indicate the number of documents and I require that they amend the log to itemize each document according to date, an identifying characteristic that should not expose their work product to an unreasonable risk of disclosure. If the amended privilege log suggests to Defendant that a real issue exists as to documents created prior to commencement of this litigation, Defendant may request a further discovery conference and it may prove necessary to inspect the documents *in camera* and/or to require Plaintiffs to support their assertion of the work product privilege by means of affidavits.

---

[6]      In Upjohn Co. v. United States, the Supreme Court extended attorney-client/work product protection to the results of interviews conducted by a corporation's counsel with the corporation's employees, observing that application of the privilege to such communications "puts the adversary in no worse position than if the communications had never taken place" and reasoning that the adversary was free to discover any facts held by the witnesses where the adversary had been provided with a list of more than 25 employees who had spoken with counsel. 449 U.S. 383, 395-96 (1981). I am concerned here that, if the tables were reversed and it were Plaintiffs seeking copies of statements Defendant took from its employees, Defendant would vigorously defend the privilege that it seeks to deny Plaintiffs. See, e.g., Rose Casual Dining, L.P., No. 02-7485, 2004 U.S. Dist. LEXIS 1983, *7-9, 2004 WL 231287, *2-3; EEOC v. Koch Meat Co., Inc., No. 91 C 4715, 1992 U.S. Dist. LEXIS 17133, *11-12, 1992 WL 332310, *3-4 (N.D. Ill. Nov. 5, 1992) (finding that counsel's communications with employee witnesses to gain information for employer to respond to an EEOC questionnaire were protected by the attorney-client privilege and work product doctrine).

C.      **Witness statements in the form of affidavits**

Plaintiffs have disclosed a communication to a potential witness that enclosed a draft affidavit.  Draft affidavits and affidavits prepared in anticipation of litigation are subject to the same rule as witness statements even if they are executed by a non-party.  <u>Stokes</u>, 2006 U.S. Dist. LEXIS 50480, *5-6, 2006 WL 2064976, *2.  Although the civil rules permit the use of affidavits in connection with pretrial motions, for purposes of trial an affidavit is essentially equivalent to an unsworn statement, although they can be considered as substantive evidence under Federal Rule of Evidence 801(d)(1) when used to impeach a trial witness concerning a prior inconsistent statement.  If Plaintiffs wish to preserve their ability to use an affidavit in that fashion (as "substantive" impeachment evidence that would not require a limiting instruction), they must include it among their pretrial disclosures under Rule 26(a)(3).

### Conclusion

Defendant's request that Plaintiffs be compelled to produce their notes of witness interviews, witness statements and affidavits, and correspondence related to the acquisition of statements or affidavits is denied, but its request for more specificity in the privilege log is granted to the limited extent set forth herein.  Plaintiffs are ordered to amend their privilege log to itemize the documents in each of the categories addressed herein according to date of creation.  Plaintiffs are also ordered to clarify the nature of the documents that they have identified as related to Plaintiffs' individual efforts to investigate the case and collect evidence.  Finally, Plaintiffs will amend or supplement their initial disclosures if they have previously failed to identify any of their witnesses by name and contact information.  These amendments shall be provided to Defendant no later than March 22, 2010.

<u>CERTIFICATE</u>

Any objections to this Order shall be filed in accordance with Fed. R. Civ. P. 72.

***So Ordered.***

March 12, 2010                         /s/ Margaret J. Kravchuk
                                       U.S. Magistrate Judge